## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAURA N. OLLE | * | |
| PETER J. OLLE, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No.:  1:07-CV-02056RU |
| | * | |
| 5401 WESTERN AVENUE | * | |
| RESIDENTIAL, LLC, et al., | * | |
| | * | |
| | * | |
| Defendants. | * | |

**DEFENDANTS' REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY
LITIGATION PENDING ARBITRATION**

Defendants, 5401 Western Avenue Residential, LLC, 5401 Western PNH, LLC, PN

Hoffman Realty, LLC and Lamont Hoffman ("Defendants"), by and through their undersigned

counsel, Robert C. Park, Jr. and Linowes and Blocher LLP, and pursuant to Local Civil Rules of

Procedure 7(d), hereby file this Reply Memorandum to the Plaintiffs' Opposition to Defendants'

Motion to Dismiss or, in the Alternative, to Stay Litigation Pending Arbitration.

### INTRODUCTION

On or about August 22, 2005, Plaintiffs, Laura and Peter Olle ("Plaintiffs"), entered into

a contract ("Contract") with Defendant, 5401 Western Avenue Residential, LLC, for the

purchase of a condominium in Chase Point Condominium, located at 4301 Military Road, NW,

Washington, DC 20016. *See* Exhibits 1 and 2 to Plaintiffs' Complaint.  As part of the Contract,

the parties agreed to binding arbitration in the event of any dispute, controversy, or claim

concerning the rights or obligations of the parties. *See* ¶ 29 of the Contract.   On or about the

same date, 5401 Western Avenue Residential, LLC ratified the Contract. *See* Exhibits 1 and 2 to Plaintiffs' Complaint.

Plaintiffs declined to close on the Contract as provided therein, and Plaintiffs' Contract Deposit ("Deposit") was forfeited as a result. *See* Complaint, Paragraph 16, and Paragraph 12.1 of the Contract (Exhibit 1 of the Complaint) allowing for the retention of Plaintiff's Deposit.

In their Complaint, Plaintiffs assert five causes of action, all of which are plainly within the purview of the mandatory arbitration provision in the Contract. Despite the requirement of binding arbitration in the Contract, Plaintiffs have filed the instant litigation to resolve their dispute.

In response to the Complaint, on December 26, 2007, Defendants filed their Motion to Dismiss or, in the Alternative, Motion to Stay Litigation Pending Arbitration ("Defendants' Motion"). On January 17, 2008, Plaintiffs filed their Opposition ("Opposition") to which Defendants now file this Reply Memorandum.

In their Opposition, Plaintiffs argue that Defendants' Motion should be denied for two reasons: "First, the arbitration clause is contained within an oppressive adhesion contract in violation of …" several statutes and case law cited, and therefore "… it is unconscionable and should be revoked and deemed unenforceable. Second, the arbitration clause here violates public policy …" based on case law cited. Opposition, pps. 1-2. For the reasons stated below, Plaintiffs' Opposition is not well-founded and Defendants' Motion should be granted.

## LEGAL STANDARD

In their discussion of the "Legal Standard" for this Court's review, Plaintiffs neglected to mention that there is a strong legislative policy followed by the federal courts, consistent with the Federal Arbitration Act, that favors arbitration of disputes and enforcement of arbitration

agreements.  See *United Steel Workers of America v. Warrier and Gulf Navigation Company,* 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960).  In accord with this legislative policy, the Federal Arbitration Act strictly confines the function of the court in suits to compel arbitration to the resolution of a single issue – is there an agreement to arbitrate the subject matter of a particular dispute.  See *United Steel Workers of America v. American Manufacturing Co.* 363 U.S. 564, 567-68, 80 S. Ct. 1343, 1346 (1960).  Where there is a broad arbitration clause, calling for arbitration of any and all disputes arising out of the contract, all issues are arbitrable unless expressly and specifically excluded.  *United Steel Workers of America v. Warrier and Gulf Navigation Company*, supra, 363 U.S. at 584-85, 80 S. Ct. at 1354.  Even a case cited by Plaintiffs stands for the proposition that language in an arbitration agreement that required arbitration of "any difference" that cannot be settled within forty-eight hours of the occurrence was broad enough to encompass the issue of laches.  *International Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc.*, 406 U.S. 487, 92 S. Ct. 1710 (1972).  See Opposition, page 2.  The Supreme Court of the United States in *Flair Builders* went on to say "[t]here is nothing to limit the sweep of this language or to except any dispute or class of disputes from arbitration."  Id., 406 U.S. at 491, 92 S. Ct. at 1712.

It is under this backdrop of legislative policy favoring arbitration and the enforcement of arbitration agreements that Plaintiffs' Opposition must be considered.

## **ARGUMENT**

I.    The arbitration clause in the parties' Contract is not unconscionable based upon allegations that the Contract as a whole is a contract of adhesion and, in any event, it is for the arbitrator, not the Court, to decide that issue.

Plaintiffs first contend that the arbitration clause should not be enforced because it is contained within an unconscionable contract of adhesion.  On the issue of unconscionably,

allegedly resulting in a contract of adhesion here, Plaintiffs rely heavily on *Williams v. Walker-Thomas Furniture Co.*, 350 F. 2d 445, 121 U.S. App. D.C. 315 (1965). *Walker*, as well as the other cases cited by Plaintiffs in the footnotes on pages 2-4 of its Opposition, are clearly distinguishable on their facts. For example, *Walker* did not deal with the enforceability of an arbitration clause, but, instead, dealt with a "… rather obscure provision …" in a consumer installment sales agreement for household items that had the effect of keeping a balance due on every item purchased until the balance due on all items was paid. 350 F. 2d at 447, 121 U.S. App. D.C. at 317. *Walker* also dealt with a case where the consumer was a person of limited financial means in a clearly unequal bargaining position, of which the furniture company was found to have been fully aware. Id., 350 F. 2d at 448, 121 U.S. App. D.C. at 318. The Court in *Walker* clearly was offended by the obvious disparate bargaining positions of the parties, the questionable state of the consumer's formal education, the confusing terms of the contract "hidden in a maze of fine print," and the intrinsic fraudulent nature of the transaction itself. Id., 350 F. 2d at 449-450, 121 U.S. App. D.C. at 319-320.

The Plaintiffs' case does not even approach the situation of unconscionably, unfairness, one-sided uneven bargaining positions, uneven educational or financial positions, or lacking in other meaningful choices discussed by the Court in *Walker*. The Plaintiffs, obviously well-to-do and financially secure enough to sign a Contract to purchase a $2.3 million condominium Penthouse, and write a check from a Charles Schwab investment account for $112,000 for part of the Deposit (Exhibit 1, Complaint), are not in the same circumstances as the consumer in the *Walker* case. No one was forcing the Plaintiffs to sign the Contract in this case. The Plaintiffs had multiple choices of other condominiums that were on the market in the Washington, D.C. metropolitan area at the time from which they could have selected. There are no facts presented

with any credibility except that the Plaintiffs entered into the Contract freely, voluntarily, and with a full understanding of what they were doing.

The Plaintiffs even had the right to cancel this Contract within fifteen (15) days if they had second thoughts and wished to review it more carefully with an attorney but, for whatever reasons, Plaintiffs did not elect to cancel under that provision.  Section 26, Contract, Exhibit 2, Complaint.   Each page of the Contract was initialed by the Plaintiffs, including the pages containing the arbitration clause. *Id.,*  Section 29, Contract.  The Plaintiffs came back over two years after the Contract was signed and entered into a Change Order Agreement which provided for Nine Thousand Three Hundred Dollars ($9,300.00) of additional work to be made, for options they had selected in the construction of the subject Penthouse unit.  *Id.*, Exhibit 3, Complaint.

Other cases cited by the Plaintiffs are similarly distinguishable on the law or their facts. For example, *Johnson v. Long Beach Mortgage Loan Trust*, 451 F. Supp. 2d 16 (D.C. 2006), did not involve an arbitration clause.  Like *Williams*, the *Johnson* case dealt with a transaction (this time a loan) where the Court found that the lender took advantage of the borrower's age and lack of sophistication to charge excessive fees while, at the same time, failing to make the mandatory disclosures required under the Truth-In-Lending Act.

Likewise, the case of *Carbon Black Export, Inc. v. The SS Monrosa,* 254 F. 2d 297(5th Cir. 1958), dealt with the issue of the enforceability of an agreement designating that Italian courts would be the forum for any litigation between the parties.  The Court found that the lower court had erroneously declined jurisdiction based on the doctrine of "forum non conveniens" and also found that the parties had improperly attempted to divest the federal courts of jurisdiction entirely, which the Fifth Circuit found to be against public policy.  254 F. 2d at 300-301.  In the

case at bar, the parties agreed to a recognized means of alternative dispute resolution, which is supported by a strong public policy favoring arbitration.

Similarly, the United States Supreme Court in *M/S Bremen v. Zapata Off-Shore Company,* 407 U.S. 1, 92 S. Ct. 1907 (1972), dealt with a "remote" forum selected for litigation (i.e., London, England), and the case stands for the proposition that a contractual choice of forum clause should not be enforced if enforcement would contravene a strong public policy in the forum in which the suit is brought.  407 U.S. at 15, 92 S. Ct. at 1916.  However, the Supreme Court went on to enforce the forum selected by the parties in that case.  Again, the principle of "forum non conveniens" is not applicable in this case, nor is "public policy" violated when parties agree to arbitrate disputes.

Finally, in *Wingard v. Exxon Co. USA,* 819 F. Supp. 497 (D.C.S.C.) (1992), the U.S. District Court for South Carolina upheld a provision in a franchise lease agreement between the parties that required 24-hour, 7 days-a-week operation.  Contrary to the service station operators' contentions, the Court found that such a requirement was not unconscionable and did not violate statutes otherwise.  As in the case at bar, the Court relied on the fact that there appeared to be mutual consent to that requirement in that "[e]ach dealer initialed the 24-hour provision in his lease.  All of them had ample time to review their lease; and, as reasonable businessmen, many received legal advice before signing their lease.  There is no element of surprise or deception at work here."  819 F. Supp. at 503.

A.  In its Argument IA (Opposition, p. 5), Plaintiffs take the position that the arbitration clause is "unconscionable" because the "purchase agreement is an illegal adhesion contract."  However, whether the Contract (as opposed to the arbitration clause) is violative of statutes or otherwise illegal or unconscionable is a matter for the arbitrator, and not the Court, to determine.

As stated by the United States Supreme Court in *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S. Ct. 1204 (2006), "… as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.  Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  546 U.S. at 445-446, 126 S. Ct. at 1209.

In *Hercules & Co., Ltd. v. Shama Restaurant Corp.,* 613 A. 2d 916 (C.A.D.C. 1992), the District of Columbia Court of Appeals was faced with determining whether to enforce an arbitration clause in a construction contract.  The Court stated the following in differentiating between alleged fraud in the inducement of the contract, as opposed to alleged fraud in the inducement of the arbitration clause:

> "In connection with the judicial policy which favors voluntary commercial arbitration and which seeks to constrain the ability of parties to circumvent arbitration agreements, the Supreme Court has held that a party seeking to avoid arbitration by raising a claim of fraudulent inducement must allege that the arbitration clause itself – rather than the contract as a whole – was fraudulently induced.  *Prima Paint Corp [v. Flood & Conklin Mfg. Co.* 388 U.S. 395, 402-404, 87 S. Ct. 1801, 1805-06 (1967)]. . . *Prima Paint* thus stands for the proposition that were a party to a contract containing a broad arbitration clause claims fraud in the inducement both of the arbitration clause itself and of the entire contract containing the arbitration clause, the court is to consider only the former claim.  If the claim of fraud in the inducement of the arbitration clause proves meritless, then the court is foreclosed from considering the question of fraud in the inducement of the contract as a whole, but must leave that issue to be decided by the arbitrators [citations omitted]."

In their Opposition (pp. 5-6), Plaintiffs suggest that the Contract violates the Interstate Land Sales Full Disclosure Act, the D.C. Condominium Act, and the D.C. Consumer Protection Act.  Again, however, as noted above, the issue of the legality of the Contract as a whole, as opposed to the legality or enforceability of the arbitration clause, is not for the Court to decide at this stage.  Even statutory claims can be properly decided by the arbitrator if the Court decides that the arbitration clause here is enforceable.  In *Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth, Inc.,* a case cited by the Plaintiffs, 473 U.S. 614, 105 S. Ct. 3346 (1985), the United

States Supreme Court specifically held that statutory claims of antitrust violations were subject

to arbitration under the Federal Arbitration Act.   The Supreme Court rejected the automobile

dealer's suggestion that since it was alleging violations of statutes, such allegations and claims

should be excluded from arbitration.   The Supreme Court cited the *Prima Paint Corp.* case ,

supra, and others with favor as follows:

> "And that body of law counsels
>
> 'that questions of arbitrability must be addressed with a healthy regard to the
> federal policy favoring arbitration…The Arbitration Act establishes that, as a
> matter of federal law, any doubts concerning the scope of arbitrable issues should
> be resolved in favor of arbitration, whether the problem at hand is the construction
> of the contact language itself or an allegation of waiver, delay, or a like defense
> to arbitrability…[t]here is no reason to depart from these guidelines where a party
> bound by an arbitration agreement raises claims founded on statutory rights.
> Some time ago this Court expressed 'hope for [the Act's] usefulness both in
> controversies based on statutes or on standards otherwise created [citations
> omitted], and we are well pass the time when judicial suspension of the
> desirability of arbitration and of the competence of arbitral tribunals inhibited the
> development of arbitration as an alternative means of dispute resolution.  Just last
> term in *Southland Corp. [v. Keating,* 465 U.S. 1, 12, 104 S. Ct. 852 (1984)],
> where we held that Section 2 of the Act declared a national policy applicable
> equally in state as well as federal courts, we construed that an arbitration clause to
> encompass the disputes at issue without pausing at the source in a state statute of
> the rights asserted by the parties resisting arbitration.  …Of course, courts should
> remain attuned to well-supported claims that the agreement to arbitrate resulted
> from the sort of fraud or overwhelming economic power that would provide
> grounds 'for the revocation of any contract'…   But, absent such compelling
> considerations, the Act itself provides no basis for disfavoring agreements to
> arbitrate statutory claims by skewing the otherwise hospitable inquiry into
> arbitrability."  473 U.S. at 626-627, 105 S. Ct. at 3353-3354.

Accordingly, Plaintiffs' arguments contained in Section IA of their Opposition relating to

the enforceability of the Contract as a whole should be rejected as a matter of law since these are

issues that must be deferred for decision by the arbitrator and not this Court.

B.  Plaintiffs have failed to show a reasonable basis for their allegations of fraud in the inducement as to the arbitration clause itself that would preclude this Court from referring this dispute to arbitration pursuant to the agreement of the parties.  In Argument IB, the Plaintiffs assert that the arbitration clause itself is unconscionable for the reason that it "… limits the Olles' remedies, but permits 5401 LLC to have access to those very remedies…"  Opposition, page 9.  The only basis for this contention is in the selected quoted portion of the arbitration clause found at page 10 of the Opposition, which allows the Seller to recover costs if the Plaintiffs commenced a legal action contrary to the arbitration clause.  The Plaintiffs do not assert that the arbitration clause otherwise is unreasonably favorable to Defendants.

The Plaintiffs' purported reason for avoiding the arbitration clause is irrelevant and immaterial to the present dispute.  If, in fact, the <u>Seller</u> had commenced legal action contrary to the arbitration clause, and the Plaintiffs had prevailed in having the dispute referred to arbitration, then the issue raised by the Plaintiffs certainly would have been properly an issue for the Court to address.  But, that is not what has happened since it is the Plaintiffs who have commenced legal action in violation of the arbitration agreement.  There is no allegation by the Plaintiffs that the Defendants have breached the arbitration clause in the Contract.  Accordingly, the Plaintiffs' basis under their Argument IB for voiding the arbitration clause has no factual support in the case presently before the Court.

II.   <u>The arbitration clause is not unconscionable because it allegedly is against public policy under the Interstate Land Sales Full Disclosure Act or the D.C. Consumer Protection Act.</u>

The Plaintiffs next and finally contend that the arbitration clause is unconscionable because it is "…against public policy under the Interstate Land Sales Full Disclosure Act ("ILSFDA") and the D.C. Consumer Protection Act."  Opposition, page 10.  The specific basis for the Plaintiffs' position are the provisions of ILSFDA that provide for jurisdiction of alleged

offenses and violations in the federal district courts and the provisions of the D.C. Consumer

Protection Act that allow for persons to bring actions for violations of that Act in the Superior

Court of the District Columbia.  Id., page 11.

Neither ILSFDA nor the D.C. Consumer Protection Act provide that jurisdiction of

disputes shall be solely in the courts nor that disputes relating to alleged violations of those

statutes are not to be arbitrated.  The provisions in these statutes cited by the Plaintiffs are no

different than other statutory provisions that give persons affected by violations the right to seek

redress in court.  This was the situation in *Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth,

Inc.*, supra, where the United States Supreme Court held that the automobile dealer's antitrust

statutory claims where subject to arbitration.   More specifically, the United States Supreme

Court stated the following:

> "By agreeing to arbitrate a statutory claim, a party does not forego the substantive
> rights afforded by the statute; it only submits to their resolution in an arbitral,
> rather than a judicial, forum.  It trades the procedures and opportunity for review
> of the courtroom for the simplicity, informality, and expedition of arbitration.  We
> assume that if Congress intended the substantive protection afforded by a given
> statute to include protection against waiver of the right to a judicial forum, that
> intention will be deducible from text or legislative history [citation omitted]…
> Having made the bargain to arbitrate, the party shall be held to it unless Congress
> itself has evinced an intention to preclude a waiver of judicial remedies for the
> statutory rights at issue.   Nothing, in the meantime, prevents a party from
> excluding statutory claims from the scope of an agreement to arbitrate[citation
> omitted]."  473 U.S. at 628, 105 S. Ct. 3354-3355.

No such waiver or preclusion can be read into the statutory provisions cited by the

Plaintiffs.   If a broad waiver or preclusion of arbitration could be read into such statutory

provisions, then it is fair to say that no disputes involving statutes which generally provide for

court actions for violations could ever be the subject of arbitration.  *Gray v. American Express

Company*, 240 U.S. App. D.C. 10, 743 F. 2d 10 (1984), cited by Plaintiffs at page 12 of their

Opposition and relied upon in support of this argument, clearly is distinguishable because it did

not deal with an arbitration clause but simply whether the Card Member Agreement was valid to the extent that it provided for waivers of protections accorded a card holder under the Fair Credit Billing Act. 240 U.S. App. D.C. at 15, 743 F. 2d at 15. The United States Court Appeals for the District of Columbia in *Gray* found that it was not a valid waiver because it was directly contrary to express statutory protections.

Contrary to *Gray*, there is no allegation by the Plaintiffs that either ILSFDA or the D.C. Consumer Protection Act expressly provide for the determination of disputes solely in court, as opposed to arbitration, or that these statutes expressly evidence a public policy that requires resort solely to court (rather than arbitration) for alleged violations of these statutes.

## CONCLUSION

Plaintiffs attempt to merge and gloss over their arguments relating to alleged unconscionability and alleged violations of public policy that go to the Contract as a whole as opposed to the arbitration clause. At this stage, pursuant to the case law cited above, the Court's review and determination must be limited to whether the arbitration clause itself is unconscionable. Any issue of unconscionability, unenforceability or violation of statute relating to the Contract as a whole must be deferred to the arbitrator for decision if the arbitration clause is enforceable.

As to the arguments made by the Plaintiffs that the arbitration clause itself is unconscionable or violative of public policy, as noted above, those arguments are not supported by applicable case law nor a plain reading of the language in ILSFDA and the D.C. Consumer Protection Act generally dealing with court jurisdiction.

Accordingly, Defendants' Motion to Dismiss or, in the Alternative, to Stay Litigation Pending Arbitration should be granted.

Respectfully submitted,

**LINOWES AND BLOCHER** LLP

/s/ Robert C. Park, Jr.
Robert C. Park, Jr.
7200 Wisconsin Avenue, Suite 800
Bethesda, Maryland 20814-4842
(301) 654-0504 (telephone)
(301) 654-2801 (facsimile)
rpark@linowes-law.com

Attorney for Defendants,
5401 Western Avenue Residential, LLC
5401 Western PNH, LLC, PN Hoffman
Realty, LLC and Lamont Hoffman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of February, 2008, a copy of the foregoing Defendants' Reply Memorandum to Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the Alternative, to Stay Litigation Pending Arbitration, was sent to Robert E. Greenberg, Esquire and Thomas F. Murphy, Esquire, Friedlander, Misler, Sloan, Kletzkin & Ochsman, PLLC, 1101 17th Street, NW, Suite 700, Washington, DC 20036-4704 via electronic filing.

/s/ Robert C. Park, Jr.
Robert C. Park, Jr.
