UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LAURA AND PETER OLLE, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 07-2056 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 4, 6 |
| | : | | |
| 5401 WESTERN AVENUE RESIDENTIAL, LLC, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS;
STAYING THE CASE PENDING ARBITRATION

**I. INTRODUCTION**

This case arises from the defendants' motion to dismiss or, in the alternative, motion to stay litigation pending arbitration.  The plaintiffs, Laura and Peter Olle, allege that their contract for the purchase of a luxury penthouse in Northwest Washington, D.C. is invalid because the defendants violated the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. §§ 1703(a)(1)(A), 1404, 1706; the D.C. Condominium Act, DC Code § 42-1901; and the D.C. Consumer Protection Act, D.C. Code § 28-3901.  The defendants insist that the parties arrived at a meeting of the minds and that any claims arising from the purchase agreement must be settled through arbitration.  They, therefore, move to dismiss or stay the case to allow an arbitrator to hear the plaintiffs' claims.  Because the arbitration clause is severable from the remainder of the purchase agreement and because the plaintiffs challenged the arbitration clause for the first time in their opposition to the defendants' motion to dismiss, the court grants in part the defendants' motion – staying the case pending arbitration.

## II.  FACTUAL & PROCEDURAL BACKGROUND

On October 8, 2004, the plaintiffs signed a non-binding reservation agreement with 5401 Western Avenue Residential, LLC ("5401") for the purchase of a luxury penthouse located at 4301 Military Road in Northwest Washington, D.C. ("Chase Point Unit").  Compl. ¶ 10, Ex. 1.  Three days later, the plaintiffs furnished a deposit check for $112,495 to reserve the right to purchase Penthouse Unit 1.  *Id.*  On December 23, 2004, the plaintiffs signed the purchase agreement and initialed every page of the 22-page contract.  *Id.* ¶ 11, Ex. 2.  They deposited a second check for the amount of $112,495.  *Id.*  In early May 2005, the defendants informed the plaintiffs that the Chase Point Unit would be available by the end of 2006.  *Id.* ¶ 17, Ex. 4.  Two years after they signed the purchase agreement, the plaintiffs submitted a change order agreement on December 15, 2006 and made an additional payment of $30,716.  *Id.* ¶ 12, Ex. 3.  When the plaintiffs signed the change order agreement, the defendants had not yet completed the Chase Point Unit as projected in the May 2005 letter.  *Id.* ¶ 18.  On January 29, 2007, the defendants informed the plaintiffs that closing on their unit would take place on May 17, 2007.  *Id.*  In that letter, the defendants explained that minor punch list items had delayed the date of closing.  *Id.*

On February 26, 2007, the plaintiffs viewed Penthouse Unit 1 for the first time.  *Id.* ¶ 21.  A month later, the plaintiffs sent the defendants a letter terminating the purchase agreement and requesting the return of their deposit.  *Id.*  On April 2, 2007, the defendants rejected the plaintiffs' request and stated that they would retain the total deposit amount as liquidated damages.  *Id.* ¶ 22, Ex. 7.  The next day, the plaintiffs reiterated their desire to terminate the purchase agreement.  *Id.* ¶ 23.  Similarly, the defendants insisted that the plaintiffs would forfeit their deposit unless they closed on the property.  *Id.* ¶ 24.

Seven months later, the plaintiffs filed the present complaint. On December 20, 2007, the defendants filed a motion to dismiss or, in the alternative, a motion to stay litigation pending arbitration. The plaintiffs filed their opposition, which was followed by the defendants' reply. The court now turns to the defendants' motion.

### III.  ANALYSIS

#### A.  Legal Standard to Compel Arbitration

The Federal Arbitration Act ("FAA") provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates a strong presumption in favor of enforcing arbitration agreements and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) (stating that arbitration agreements must be rigorously enforced); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that federal policy favors arbitration). Nevertheless, parties cannot be forced into arbitration unless they have agreed to do so. *AT&T Techs. Inc. v. Commc'ns Workers*, 475 U.S. 643, 648-49 (1986). Moreover, the authority of arbitrators to resolve disputes is derived from the agreement of parties to engage in arbitration. *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Because arbitration provisions are in essence a matter of contract between the parties, it is for the courts to decide whether the parties are bound by a given arbitration clause. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (holding that "a gateway dispute about

whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide") (internal quotation omitted).

Such questions of arbitrability are typically brought before the court pursuant to § 4 of the FAA, which permits a party to petition any United States district court which would otherwise have subject-matter jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When presented with a motion to compel arbitration, a district court must "determine the enforceability of the agreement [to arbitrate] and decide whether arbitration should be compelled." *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 146 (D.D.C. 2002). It is well-settled law that to make such a determination, courts must engage in a two-part inquiry. *Id.* at 149-50. First, the court must decide whether the parties entered into a valid and enforceable arbitration agreement. *Nur v. K.F.C. USA, Inc.*, 142 F. Supp. 2d 48, 50-51 (D.D.C. 2001). If the court concludes that the parties did enter into a valid arbitration agreement, the second step is to determine whether the arbitration agreement encompasses the claims raised in the complaint. *Id.*

### B. The Court Stays the Case Pending Arbitration

#### 1. The Parties Entered into a Valid, Enforceable Arbitration Agreement

The evidence shows that the plaintiffs entered into a condominium purchase agreement ("Agreement") with 5401 that included a requirement that all disputes arising out of or relating to the agreement be arbitrated. Compl., Ex. 2 ¶ 29. Pertinently, the clause provides:

> ANY DISPUTE, CONTROVERSY, OR CLAIM CONCERNING THE RIGHTS OR OBLIGATIONS OF THE PARTIES, INCLUDING, WITHOUT LIMITATION, ANY CONDITION OR ELEMENT OF THE UNIT, NEIGHBORHOOD OR NEARBY PROPERTY; THE NEED OR EFFECTIVENESS OF ANY REPAIR OR REPLACEMENT UNDER THE LIMITED WARRANTY; OR ANY CLAIM OR MISREPRESENTATION, FRAUD, OR BREACH OF THIS AGREEMENT, SHALL BE SUBMITTED TO

>           AND SETTLED BY BINDING ARBITRATION PURSUANT TO THE
>           FEDERAL ARBITRATION ACT.

*Id.* Furthermore, it is basic law that "[o]ne who signs a contract which he had an opportunity to read and understand is bound by its provisions." *Paterson v. Reeves*, 304 F.2d 950, 951 (D.C. Cir. 1962).

Nevertheless, the plaintiffs challenge the enforceability of the Agreement. Pls.' Opp'n to Mot. to Dismiss ("Pls.' Opp'n") at 2. The plaintiffs argue that the "illegality and oppression of the overall contract encompasses the arbitration clause such that it was impossible for the Olles to have a meaningful choice when they agreed to arbitration." *Id.* at 5. This is so because the Agreement is "an oppressive adhesion contract, offered to the Olles as a standard contract form on a take it or leave it basis without realistic opportunity to bargain." *Id.* at 7. Additionally, 5401 used "deceptive sales practices to induce the Olles to sign the Purchase Agreement containing the arbitration clause," *id.* at 8; to wit, they misled the plaintiffs as to the specifications of the unit – specifically, they assured the plaintiffs that a bathroom and grill could be installed in accordance with their wishes but never fulfilled this commitment. *Id.* at 9; Compl. ¶ 42. Furthermore, the terms of the arbitration clause are unreasonably favorable to the defendants because the clause permits the defendants to recover costs if a suit is filed but deprives the plaintiffs of the same right. *Id.* at 10. And finally, the clause is against public policy under the ILSFDA and the D.C. Consumer Protection Act because it "completely ousts the jurisdiction of the court, against the express terms" of the statutes, *id.* at 12, which state that the "district courts of the United States . . . shall have jurisdiction of offenses and violations under this title," 15 U.S.C. § 1719 (ILSFDA), and that "a person . . . may bring an action under this chapter in the Superior Court of the District of Columbia," D.C. Code § 28-3905k(1) (D.C.

Consumer Protection Act). At a minimum, the plaintiffs insist that they deserve a hearing to present evidence concerning all the circumstances surrounding the transaction. *Id.* at 8 n.24.

The defendants reply that the plaintiffs cannot evade the requirements of the arbitration clause by alleging that the contract as a whole is unconscionable. In the first place, the clause is severable from the remainder of the Agreement. Defs.' Reply at 7. And, second, the Agreement's validity is a question answered in the first instance by the arbitrator. *Id.* at 7. They point out that "a party seeking to avoid arbitration by raising a claim of fraudulent inducement must allege that the arbitration clause itself – rather than the contract as a whole – was fraudulently induced." *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). The plaintiffs have, the defendants declare, failed to show a reasonable basis for their allegations of fraud in the inducement as to the arbitration clause itself. *Id.* The fact that the clause permits cost recovery to the seller is irrelevant, the defendants urge, because the instant case does not present the issue for the court's consideration, as the plaintiffs are not alleging that the defendants have breached the arbitration clause. *Id.* at 9. As to public policy, the defendants note that the plaintiffs have not – in the absence of any evidence of legislative intent to protect against waiver of the right to a judicial forum – demonstrated that the pertinent Acts explicitly provide for the determination of disputes solely in court, as opposed to arbitration. *Id.* at 10-11.

The plaintiffs' arguments are wholly unpersuasive. Assuming the contract does qualify as a contract of adhesion, this avails the plaintiffs nothing: adhesion contracts are enforceable unless unconscionable. *Smith, Bucklin & Assocs., Inc. v. Sonntag*, 83 F.3d 476, 480 (D.C. Cir. 1996). To establish unconscionability, the plaintiffs must prove both that they lacked a meaningful choice and that the terms of the contract were unreasonably favorable to the other

party. *Id.* at 480.  The plaintiffs do not argue that they lacked a meaningful choice or were misled by the terms of the arbitration clause.  The arbitration clause was not "hidden in a maze of fine print"; in fact, the clause and its terms were capitalized and separately paragraphed. *Walker-Thomas*, 350 F.2d at 449; Compl., Ex. 2 ¶ 29.  The plaintiffs contracted to purchase a $2.5 million condominium and have not alleged that they lack the basic educational or financial wherewithal to negotiate a real-estate purchase contract or its attendant arbitration clause. Compl. ¶ 10, Ex. 2.; *see Weaver v. Bratt*, 421 F. Supp. 2d 25, 35 (D.D.C. 2006) (identifying education levels and bargaining power of parties as factors in determining unconscionability). Additionally, the plaintiffs had fifteen days to review and cancel the Agreement.  Compl., Ex. 2 ¶ 26.  And because they initialled all 22 pages of the contract, they cannot credibly claim that they were deprived of the opportunity to read and understand the Agreement before they signed it.  *Booker v. Robert Half Intern., Inc.*, 315 F. Supp. 2d 94, 102 (D.D.C. 2004).[1]

As for whether the clause is unreasonably favorable to the defendants, its terms apply equally to both parties – the only exception being the provision entitling the seller to recover costs if the buyers commence a legal action contrary to the arbitration clause.  Compl., Ex. 2 ¶ 29.  As an initial matter, this objection, based on a hypothetical conflict not currently before the court, is not yet ripe for judicial resolution: the court, of course, lacks jurisdiction to issue advisory opinions.  *See Munsell v. Dep't of Agriculture*, 509 F.3d 572, 585 (D.C. Cir. 2007) (explaining that "the ripeness inquiry springs from the Article III case or controversy requirement that prohibits courts from issuing advisory opinions on speculative claims"; the

---

[1] The plaintiffs insist that it is their right to be afforded an evidentiary hearing on the question of unconscionability.  Pls.' Opp'n at 8 n.24.  But their brief raises no genuine issue of material fact in dispute supporting their allegation of fraudulent inducement of the arbitration clause. *Bloomgarden v. Coyer*, 479 F.2d 201, 208 (D.C. Cir. 1973); *see also Goldstein v. S & A Restaurant Corp.*, 622 F. Supp. 139, 140 (D.D.C. 1985) (declaring that claim of unconscionability mandates hearing on merits only if real issues of fact are raised).

issue "normally arises in cases in which a [] party faces the threat of future . . . [adverse] enforcement action").  In any event, the clause, providing the defendants' cost recovery for litigation precedent to arbitration, appears self-defensive, *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) (explaining that "[a]rbitration agreements allow parties to avoid the costs of litigation").  The FAA was enacted to rigorously enforce private written arbitration agreements. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985).  "The 'liberal federal policy favoring arbitration agreements' . . . is at bottom a policy guaranteeing the enforcement of private contractual agreements." *Id.* at 625 (citations omitted).  Thus, awarding attorney's fees to a party who prevails on a motion to compel arbitration under the FAA would further Congress's intention to "rigorously enforce" arbitration agreements. *Cf. Am. Reliable Ins. Co. v. Stillwell*, 212 F. Supp. 2d 621, 634 (N.D. W.Va. 2002) (holding that awarding costs to party who defeats motion to compel would frustrate Congress's intention).  Because the clause is silent on whether the plaintiffs could likewise seek a recovery of court costs had the defendants initiated suit, the court may interpret the clause to apply symmetrically and fairly, as "an interpretation that makes a contract lawful is preferred to one that renders it unlawful." *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1485 (D.C. Cir. 1997).

Turning to the issue of fraud, the only fraudulent matter raised by the plaintiffs concerns the terms of the contract itself – the size of the unit and the feasibility of installing a bathroom and grill – not the arbitration clause.  Pls.' Opp'n at 9.  Only if the plaintiff were alleging fraudulent inducement of the specific arbitration clause would this have any bearing on the court's power to hear this dispute.  It is well established that "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it." *Prima Paint Corp.*, 388

U.S. at 403-04.  However, when a party raises fraud in the inducement of the contract generally, this is a matter for arbitration.  *Id.*  Significantly, nowhere in their complaint do the plaintiffs argue that they were fraudulently induced to specifically enter into the arbitration clause.  The issue is, therefore, orthogonal to the court's analysis of the conscionability of the arbitration clause.  *Szymkowicz v. DIRECTV, Inc.*, 2007 WL 1424652, at *2 (D.D.C. May 9, 2007).

Finally, the plaintiffs complain that the arbitration clause improperly ousts the court of jurisdiction over their statutory claims.  But it is common for parties to agree to seek to vindicate their statutory rights in a forum of their choosing such as arbitration.  Therefore, compelling the plaintiffs to arbitrate their dispute will "not [cause them to] forgo the substantive rights afforded by the statute[s]; it only submits . . . their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628).  In sum, the court concludes that the arbitration agreement is enforceable.

### 2. The Clause Encompasses the Claims of the Dispute

Next, the court must determine whether the arbitration clause encompasses the claims raised in the complaint.  *AT&T Techs.*, 475 U.S. at 648-49.  The plaintiffs do not dispute that it does.  Pls.' Opp'n at 1-2.  Pertinently, the clause provides:

> ANY DISPUTE, CONTROVERSY, OR CLAIM CONCERNING THE RIGHTS OR OBLIGATIONS OF THE PARTIES, INCLUDING, WITHOUT LIMITATION, ANY CONDITION OR ELEMENT OF THE UNIT, NEIGHBORHOOD OR NEARBY PROPERTY; THE NEED OR EFFECTIVENESS OF ANY REPAIR OR REPLACEMENT UNDER THE LIMITED WARRANTY; OR ANY CLAIM OR MISREPRESENTATION, FRAUD, OR BREACH OF THIS AGREEMENT, SHALL BE SUBMITTED TO AND SETTLED BY BINDING ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT.

Compl., Ex. 2 ¶ 29.  "Motions to compel arbitration under an arbitration clause should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'" *Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.*, 850 F.2d 756, 760 (D.C. Cir. 1988) (quoting *Zandford v. Prudential-Bache Sec., Inc.*, 112 F.3d 723, 727 (4th Cir.1997)).  The Supreme Court has held that courts should broadly interpret the "language 'arising out of or relating to' the underlying contract or agreement." *Mitsubishi Motors Corp.*, 473 U.S. at 624 n.13; *Prima Paint Corp.*, 388 U.S. at 406.  The language used here is as broad as that declared capacious by the Supreme Court.  All of the plaintiffs' claims grow out of the purchase agreement.  Even more pointedly, the arbitration clause encompasses any fraud or misrepresentation, the claims comprising the gravamen of the complaint.  *See* Compl. ¶¶ 43, 49, 55.  The court, therefore, concludes that the arbitration clause precludes litigation prior to arbitration.

### IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendants' motion to dismiss; the court compels arbitration and stays the case until the conclusion thereof.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 6th day of August 2008.

RICARDO M. URBINA<br>United States District Judge